UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | No. 2:07 CV 48 |
| v.   ) | |
| ) | (arising from 2:02 CR 44) |
| WILLIAM DAVISON,   ) | |

## OPINION and ORDER

This matter is before the court on William Davison's motion under 28 U.S.C. § 2255 and the memoranda he filed in support. (Cause No. 2:02 CR 44, DE # 406-07, 413, 416; Cause No. 2:07 CV 48, DE # 1, 2.)[1] The government has responded (DE # 419), and though Davison's reply brief was due on October 1, 2007, as of the date of this order, he has failed to file a reply. The court now **DENIES** Davison's motion.

## I. BACKGROUND

A jury found Davison guilty of two counts of distributing crack cocaine. (DE # 156.) This court sentenced him to 180 months in prison for each count, the sentences to run consecutively, making his combined sentence 360 months. (DE # 253.) At Davison's sentencing hearing, the court made additional factual findings, including that Davison had been part of a drug distribution conspiracy for several years, personally distributed more than 1.5 kilograms of crack as part of that conspiracy, and had used weapons during his crack distribution activities. *See United States v. Davison*, 166 Fed. Appx. 246, 247 (7th Cir. 2006); (Transcript of Sentencing Hearing at 79-82.) Applying the United

---

[1] One of Davison's various memoranda is a motion to cite supplemental authority. (DE # 416.) Upon reviewing the docket, the court realized that this motion has yet to be ruled upon. The motion (DE # 416) is therefore **GRANTED**.

States Sentencing Guidelines in effect at the time, the court used these findings to calculate the 360 month sentence it imposed. *Id.*

Davison appealed, and while his appeal was pending, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005). Relying on *Booker*, the Seventh Circuit determined that Davison's sentence violated his Sixth Amendment right to a jury trial because this court had used facts not proven to the jury beyond a reasonable doubt to increase Davison's sentence under the guidelines. *See United States v. Price*, 418 F.3d 771, 786-87 (7th Cir. 2005); (DE # 360.) In order to determine whether this *Booker* violation constituted plain error and thus entitled Davison to resentencing, the Seventh Circuit ordered a limited remand pursuant to its decision in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). *Price*, 418 F.3d at 787-88. The remand directed this court to determine whether it would have imposed a different sentence had the guidelines been advisory rather than mandatory. *Price*, 418 F.3d at 787-88. On remand, this court held that even with the discretion granted under *Booker*, it would have imposed the same sentence. (DE # 365.) The Seventh Circuit then affirmed. *See Davison*, 166 Fed. Appx. at 246. Davison now challenges his sentence under § 2255, claiming that:

(1) the court erred by attributing a larger quantity of drugs to him;

(2) the court erred in using its finding that he was a member of a drug conspiracy to increase his sentences for drug distribution because the conspiracy was not part of the same course of conduct as the drug distribution;

(3) there was a discrepancy at trial over how much crack he distributed in the two sales that formed the basis for his convictions;

>    (4)   the court erred by making its own findings that he was a member of the conspiracy and distributed a particular amount of crack cocaine through the conspiracy and then using those findings to increase his sentence; and
>
>    (5)   his trial counsel was ineffective for agreeing at sentencing that this court's rulings were "accurate."

(DE # 406 at 4-9; DE # 413.)

## II. ANALYSIS

A § 2255 motion allows a federal prisoner "in custody . . . claiming a right to be released" to attack his sentence on the grounds that it was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1. As discussed below, this court rejects Davison's attacks on his sentence, and denies his motion.

### A. Procedural Default

Davison's claims (1), (2), and (3) are procedurally defaulted because Davison could have raised them on direct appeal, but failed to do so. *See Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (failure to raise a claim on direct appeal that is based on evidence available at the time bars claim from consideration on § 2255 motion). To overcome this procedural default, Davison would need to show cause for the default and resulting prejudice. *See Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) ("[w]hen an issue is not raised on direct appeal, but later attacked collaterally . . . the petitioner will be barred from collateral review unless he can show good cause for failing to raise the issue and actual prejudice"). As demonstrated though this court's

3

analysis of these claims below, Davison fails to demonstrate any prejudice because his claims fails on the merits. However, the government has failed to argue that these claims were procedurally defaulted, and thus may have waived the argument. *See United States v. Angelos*, 763 F.2d 859, 861 (7th Cir. 1985) ("waiver is waivable"); *but see Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998) (in 28 U.S.C. § 2254 cases, "[i]f the State does not explicitly or implicitly forego the waiver defense, we may make *sua sponte* inquiry into whether a procedural default is manifest") Therefore, although the court considers these three claims to be procedurally defaulted, it will also substantively address them.

### B. Davison's Claim Regarding the Quantity of Drugs Attributed to Him

In his claim (1), Davison argues that this court erred in attributing a larger amount of drugs to him at his sentencing than the jury did at his trial. (DE # 406 at 4; DE # 413 at 5-6.) Davison notes that the jury found him guilty of distributing crack on two specific occasions, and that the total amount of crack involved in those transactions, according to evidence presented at trial, was only 2.2 grams. Thus, he contends that the court erred in finding that he distributed over 1.5 kilograms of crack and then using this finding to increase his sentence under the guidelines. (DE # 413 at 6-7.) Davison is incorrect.

Under United States Sentencing Guideline § 1B1.3(a)(2), the court has the authority to base Davison's sentence on the quantity of drugs Davison sold during all drug sales "that were part of the same course of conduct or common scheme or plan as

4

the offense of conviction." Evidence at trial and sentencing firmly established that Davison "personally distributed over 1.5 kilograms of crack" as part of his course of conduct with his codefendants and the other members of the conspiracy. *See Davison*, 166 Fed. Appx. at 249. The sentencing guidelines allow the court to attribute this amount to Davison and doing so does not entitle him to relief in this context.

### B. Davison's Conspiracy Claim

In his claim (2), Davison alleges that this court erred in finding at sentencing that he was a member of an ongoing conspiracy to distribute crack and using that finding to increase his sentence, because his convictions were not part of the same "course of conduct" as the conspiracy. (DE # 406 at 5-6.) This court disagrees.

At sentencing and trial, the government presented evidence that Davison had been part of a conspiracy to distribute crack for several years. The court then found that Davison had been part of a drug-selling conspiracy from 1997 until the time of his arrest in 2002. (Transcript of Sentencing at 80.) The court also found that Davison served the conspiracy by acting as a street seller and a "shooter," and that he regularly sold crack in the same area several days a week. (*Id.* at 80-82.) The strong evidence presented at trial and at sentencing convinced the court that there was "no doubt" that he was a member of the conspiracy. (*Id.* at 80.)

Guideline § 1B1.3(a)(2) allows a federal district court to base a defendant's sentence on all of the acts "that were part of the came course of conduct or common scheme or plan as the offense of conviction." The Seventh Circuit has explained that "to

5

be a 'common scheme,' [a defendant's] offense of conviction and the uncharged conduct must 'be substantially connected to each other by at least one common factor, such as common victims, common accomplices, [or] common purpose.'" *United States v. Wilson*, 502 F.3d 718, 723 (7th Cir. 2007) (quoting U.S.S.G. § 1B1.3(a)(2) cmt. n. 9(A)). In this case, the two sales that formed the basis for Davison's two convictions occurred during the relevant time period, in the place where the conspiracy operated, and served the purpose of the conspiracy – to distribute crack cocaine. In this court's view, there was substantial evidence that connected Davison's two convictions to the conspiracy. *See United States v. Rivera*, 6 F.3d 431, 445 (7th Cir. 1993) (conviction was part of same "course of conduct" as other uncharged drug transaction for sentencing purposes because conspirators were same and time and location were similar).

  Davison's argument that these sales were not part of the same "course of conduct" as the conspiracy requires the logical leap that though he was a member of the conspiracy generally, and the acts underlying his convictions are the exact things one would do as a member of the conspiracy, in those two particular instances, he acted apart from the conspiracy. The court declines to make this illogical assumption. The two sales that formed the basis for Davison's convictions were carried out in furtherance of the drug-selling conspiracy. Furthermore, the crack Davison sold to the government's informant on those two occasions did not appear out of thin air. He must have had it supplied to him, in some form, by another person, and given the evidence of his long-standing involvement in the conspiracy, it was highly likely that he received that crack

from other conspiracy members. The court did not err by finding that the two sales forming the bases for Davison's convictions were part of the same course of conduct as the general conspiracy.

### C. Davison's Drug Amount Discrepancy Claim

Davison argues that there was a discrepancy over the exact amount of drugs that he was found guilty of distributing at trial, and the discrepancy entitles him to resentencing. (DE # 413 at 5-6.) However, there was no discrepancy over the amount of drugs. At trial, one government witness, FBI Special Agent Steele, testified about the weight of the specific exhibits that contained the drugs, which including the packaging. (Transcript of Trial 4-221.) Then a later witness, a DEA forensic chemist, testified about the weight of the drugs themselves, without any packaging. (*Id.* at 5-20.) Given this difference, it was appropriate that the weights noted by the two witnesses were not the same. This claim is baseless.

### D. Davison's Sixth Amendment Claim

Davison also claims that this court violated his Sixth Amendment rights by finding him to be a member of the drug conspiracy, and thus responsible for distributing more crack than the jury's verdict reflected, and then using this larger amount to increase his sentence. (DE # 406 at 7; DE # 413 at 8-11.) The Seventh Circuit explicitly addressed this claim on direct appeal. *See Price*, 418 F.3d at 787. As explained above, the Seventh Circuit recognized that using these findings to increase Davison's mandatory guideline range did violate his Sixth Amendment rights. *Id.* However, the

7

Seventh Circuit remanded to see whether this Sixth Amendment violation rose to the level of plain error. *See id.* at 787-88. Then after this court held that it would have imposed the same sentence even under an advisory guidelines scheme, the Seventh Circuit held that this violation was not plain error. *Davison*, 166 Fed. Appx. at 248 ("Davison concedes that the district court's 'decision that it would have imposed the same sentence . . . has essentially snuffed out the Sixth Amendment *Booker* issue'").

A court cannot reconsider a claim that has already been addressed in the litigation. *United States v. Story*, 137 F.3d 518, 520 (7th Cir. 1998) ("under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case"); *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986) (when a claim was raised on direct appeal and rejected by the court of appeals, that claim cannot be relitigated in a Section 2255 motion "unless an intervening change in law or some other special circumstance" warrants a reexamination of the issue). Therefore, this court cannot entertain this claim.

Furthermore, the court's actions would have been proper under the current, post-*Booker*, advisory guidelines. Specifically, "*Booker* clearly permits a district court to grant a sentencing enhancement based on facts not charged in the indictment, not proven to a jury beyond a reasonable doubt or not admitted by the defendant." *United States v. Owens*, 441 F.3d 486, 490 (7th Cir. 2006). That is what occurred in this case – this court enhanced Davison's sentence after finding that he distributed more than 1.5 kilograms of crack as part of a lengthy and complex conspiracy.

**E. Davison's Ineffective Assistance of Counsel Claim**

Davison's final claim alleges that his counsel was constitutionally ineffective because counsel agreed with the court at sentencing that its factual findings were accurate. (DE # 406 at 8-9.) This claim is unsupported by the record.

At sentencing, Davison's counsel contested the evidence presented by the government in aggravation, and objected to Davison's guideline range, the quantity of drugs attributed to him, and other sentencing enhancements. (*See* DE # 249; Transcript of Sentencing at 74-78.) This court overruled those objections. (Transcript of Sentencing at 79-81.) After the court made its contested findings and announced the applicable guideline range based on its findings, it asked "Counsel, without repeating previously expressed objections based on my rulings, am I now accurate?" (*Id.* at 83.) Davison's counsel then agreed, "[y]ou are accurate." (*Id.*)

That statement had no adverse effect on Davison's case. His counsel had already made his objections and had preserved those objections for appeal. All that this agreement did was acknowledge that given this court's fact-findings, which counsel disputed, the guideline range was correct. Thus, agreeing that the court's range was "accurate" was simply a way to allow the court to move forward with the proceedings. In no way, was this "agreement" deficient performance, and therefore Davison fails to satisfy the initial prong of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (to prevail

on claim of ineffective assistance of counsel, defendant must show deficient performance and resulting prejudice).

### III. CONCLUSION

For the reasons given above, Davison's motion pursuant to § 2255 (DE #406) is **DENIED**. The associated civil case is **DISMISSED**. The clerk shall enter final judgment accordingly, and give immediate notice to Davison.

**SO ORDERED.**

**ENTER:** February 8, 2008

                                         s/ James T. Moody
                                         JUDGE JAMES T. MOODY
                                         UNITED STATES DISTRICT COURT